# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| TRADE AM INTERNATIONAL INC., ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | **FILE NO: 1:08-cv-03711-ECS** |
| v. ) | |
| ) | |
| THE CINCINNATI INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN OF DEFENDANT'S PROPOSED EVIDENCE AND FOR BIFURCATION OF TRIAL

### I.      INTRODUCTION

Plaintiff Trade Am International Inc. ("Trade Am") has asserted breach of contract claims under Defendant Cincinnati Insurance Company's ("CIC's") insurance policy ("Policy"), as well as a claim for attorneys' fees. In this Motion,[1] Trade Am moves the Court to exclude all alleged evidence proffered by CIC that relates to six affirmative defenses that this Court dismissed on summary judgment and which is otherwise irrelevant:

---

[1] In accordance with the Court's September 10, 2010 Order, Trade Am will file a Motion in Limine on or before September 20, 2010 on any other evidentiary issues not raised herein.

1. Trade Am's claim of coverage is defeated by a Policy exclusion;

2. Trade Am failed to satisfy any condition precedent to coverage under the Policy;

3. Trade Am failed to mitigate its damages;

4. Trade Am failed to cooperate with CIC's claim investigation;

5. Trade Am's claim is barred by the doctrine of unclean hands;

6. Trade Am's claim is barred in part by the doctrine of accord and satisfaction.

(June 4, 2010 Order, Tidwell, J. ("Order") [Docket Entry ("D.E.") 165].)

The Court's Order compels the relief requested by Trade Am. The evidence CIC would offer on these affirmative defenses in no way relates to Trade Am's breach of contract claims and would be relevant, if at all, only to Trade Am's claim for attorneys' fees. Permitting CIC to introduce alleged evidence that relates only to the attorneys' fees claim during the trial of Trade Am's breach of contract claims would confuse the jury, severely prejudice Trade Am's case, and conflict with the Court's Order. Thus, under Fed. R. Civ. P. Rule 42(b), Trade Am also moves the Court to bifurcate the trial to ensure that alleged evidence relating to the dismissed affirmative defenses is used by CIC only in defense of Trade Am's attorneys' fees claim, and not as a back door subterfuge by CIC to confuse and

taint the jury on Trade Am's straightforward breach of contract claims. In addition to these reasons which alone should justify the Court permitting bifurcation, Trade Am's claim for attorneys' fees will not go forward *unless* Trade Am first is successful on its breach of contract claim. Accordingly, bifurcation also may preserve significant time and resources of the Court, the parties, and jurors as the proffered evidence by CIC in defense of Trade Am's attorneys' fees claim is voluminous, as outlined below.

## II.    BACKGROUND

CIC's evidence at issue in this Motion falls into two general categories:

(1) alleged evidence that damage, if any, to the inventory was *caused* by something other than the August 2008 water pipe break, which evidence is barred by the Court's Order that no exclusions to coverage apply; and

(2) alleged evidence in support of CIC's other dismissed affirmative defenses that is likewise not relevant to Trade Am's breach of contract claims and potentially admissible, if at all, only in defense of Trade Am's attorneys' fees claim.

The specific evidence at issue, which is discussed in detail below, includes the following types of evidence which are *not* relevant and admissible on Trade Am's breach of contract claims:

(1)     alleged evidence that a downturn in the market for Trade Am's goods was the *cause* of all or part of Trade Am's business interruption damages;

> This category of alleged evidence would be relevant only to prove that the "loss of market" Policy exclusion applies (Policy, Building and Personal Property Form § A.3.b.(2)(b), p. 7 of 35 [D.E. 1-3, p. 5 of 54 (Compl. at Ex. A)]), which potential defense was dismissed by the Court's June 4, 2010 summary judgment ruling as to Policy exclusions.

(2)     alleged evidence that "roof leaks" were the *cause* of the physical damage, if any, to Trade Am's merchandise;

> Similarly, this category of alleged evidence would be relevant only to prove that some water-related exclusion applies (Policy, Building and Personal Property Form § A.3.b.(2)(f), p. 8 of 35 [D.E. 1-3, p. 6 of 54]), which potential defense was dismissed by the Court's June 4, 2010 summary judgment ruling as to Policy exclusions.

(3)     alleged evidence that Trade Am failed to satisfy any Policy condition, including that Trade Am failed to mitigate its damages through, among other things, (i) allegedly requiring Epic Response to suspend its drying operations overnight, or (ii) allegedly failing timely to respond to the flood over the weekend of August 16-18, 2008; and

> This category of alleged evidence would be relevant only to prove that Trade Am failed to satisfy the "mitigation" Policy condition to coverage (Policy, Building and Personal Property Form § D.3.a.(4) [D.E. 1-3, p. 25 of 54]), which potential defense was dismissed by the Court's June 4, 2010 summary judgment ruling as to "failure to satisfy conditions precedent" and "failure to mitigate."

(4)    alleged evidence that Trade Am failed to satisfy the Policy condition requiring Trade Am to cooperate with CIC's claim investigation through, among other things (i) allegedly obstructing CIC's direct contacts with Trade Am's customers, or (ii) allegedly failing timely to produce documents.

> This category of alleged evidence would be relevant only to prove that Trade Am failed to satisfy the "cooperation" Policy condition to coverage (Policy, Building and Personal Property Form § D.3.a.(8) [D.E. 1-3, p. 25 of 54]), which potential defense was dismissed by the Court's June 4, 2010 summary judgment ruling as to "failure to satisfy conditions precedent" and "failure to cooperate."

## III.    ARGUMENT

**A.    CIC Cannot Submit Evidence of Purported Excluded "Causes of Loss" That Is Not Relevant to Trade Am's Breach of Contract Claims.**

**1.    Standards Of Insurance Policy Interpretation.**

A court construing an insurance policy "must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each

other." <u>York Ins. Co. v. Williams Seafood of Albany, Inc.</u>, 273 Ga. 710, 712, 544 S.E.2d 156, 157 (2001). "The policy should be read as a layman would read it." <u>Id.</u> Exclusions must be "strictly construed against the insurer and in favor of coverage." <u>Id.</u> Insurance contracts are to be read in accordance with the "reasonable expectations of the insured where possible." <u>Richards v. Hanover Ins. Co.</u>, 250 Ga. 613, 615, 299 S.E.2d 561, 563 (1983). "Any ambiguities in the contract are strictly construed against the insurer as drafter of the document." <u>Id.</u>

## 2. Trade Am's Policy Is An "All-Risk" Policy, Meaning That <u>All</u> "Causes Of Loss" Are <u>Covered</u> Unless Specifically Excluded.

Trade Am purchased an "all-risk policy" which provides that all causes of loss are covered except those that CIC can prove are subject to a specific Policy exclusion. It is black letter insurance law that "[a]ll-risk insurance covers the insured for damage to the subject matter of the policy from *all causes except those specifically excepted in the policy.* In contrast, *specified risk insurance* covers damage to the subject matter of the policy only if it results from specifically identified causes listed in the policy." New Appleman on Insurance Law Library Edition § 1.06[4] (emphasis added), excerpt attached. "The all-risk insured needs to establish only that a loss occurred; the burden then shifts to the insurer to show that the loss *was caused by an exception. Thus, where the cause of a loss is*

*difficult to identify and prove, an all-risk policy can be highly beneficial to the insured."* Id. (emphasis added).[2]

The Georgia Supreme Court recently interpreted an "all-risk" property insurance policy with language *identical* to Trade Am's policy in York Ins. Co., 273 Ga. at 712, 544 S.E.2d at 158.   In that case, the Court explained the insured's low burden of proof under an "all-risk" property policy and that it is the insurer's burden to establish that an excluded *cause* bars coverage.   The court explained:

> Section A of the cause of loss form provides "covered causes of loss means risks of direct physical loss unless the loss" is excluded in section B or limited in section C.   *A layman reading this policy would understand that damage from any cause…would be covered unless an exclusion or limitation from section B or C applies.*

York Ins. Co., 273 Ga. at 712, 544 S.E.2d at 158 (emphasis added).

Here, Trade Am's Policy is undoubtedly an "all-risk" policy, which provides as follows:

---

[2] Put another way, "[t]he insured has the burden of establishing a prima facie case for recovery by proving the existence of an all-risk policy and the loss of covered property; once the insured has established a prima facie case, the burden then shifts to the insurer to prove that the claimed loss is excluded from coverage." Appleman on Insurance Law § 3092, 2010 Cumulative Supplement at p. 81, excerpt attached.

**SECTION A.  COVERAGE**

We will pay for direct physical "loss" to Covered Property at the "premises" *caused by or resulting from any Covered Cause of Loss.*

(Policy, Building and Personal Property Coverage Form § A, p. 3 of 35 [D.E. 1-3,

p. 1 of 54] (emphasis added).)   In turn, the term "Covered Cause of Loss" is

defined by the Policy as follows:

    **3.  <u>Covered Causes of Loss</u>**

    **a.    <u>Risks of Direct Physical Loss</u>**

    Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:

    (1)  Excluded in **Section A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions;** or

    (2)   Limited in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations;**

    that follow.

(Policy, Building and Personal Property Coverage Form § A.3.a.(1)-(2), p. 5 of 35

[D.E. 1-3, p. 3 of 54].)

Likewise, as to Trade Am's coverage for Business Interruption losses, the

Policy provides in relevant part:

    **b.    <u>Business Income and Extra Expenses</u>**

    **(1) Business Income**

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical "loss" to property at a "premises" **caused by or resulting from any Covered Cause of Loss**.

(Policy, Building and Personal Property Coverage Form § A.5.b.(1), p. 16 of 35 [D.E. 1-3, p. 14 of 54] (third emphasis added).)

Thus, Trade Am satisfies its burden here to trigger coverage for its property damage claim by establishing only that it suffered "direct physical 'loss' to Covered Property at the 'premises.'" (Policy, Building and Personal Property Coverage Form § A, p. 3 of 35 [D.E. 1-3, p. 1 of 54] (emphasis added).) The same proof satisfies Trade Am's burden to trigger coverage for its business interruption claim, with the added element of a "necessary 'suspension'" of operations. (Policy, Building and Personal Property Coverage Form § A.5.b.(1), p. 16 of 35 [D.E. 1-3, p. 14 of 54].) Once Trade Am meets its burden to show that there was "direct physical loss" to its inventory, it has satisfied the Policy's requirement for showing a "covered cause of loss."

### 3. Alleged Evidence Of "Roof Leaks" Relates Only To CIC's Dismissed Exclusion-Based Defenses And Is Irrelevant To The Breach of Contract Elements Trade Am Must Establish At Trial.

As noted, CIC has already agreed that Trade Am suffered "physical loss," hence its "advance payment" of $500,000 toward a covered claim for damage to

Trade Am's rugs and its statements at the Court's status conference on September 2, 2010 that Trade Am suffered covered loss.  CIC's alleged evidence of "roof leaks" as the *cause* of the "physical loss" is wholly irrelevant to the elements of "direct physical 'loss' to Covered Property at the 'premises'" that Trade Am must establish to trigger coverage.[3]  Stated another way, alleged "roof leaks" would be potentially relevant to Trade Am's breach of contract claim *only if* CIC had not been foreclosed by the Court's summary judgment Order from arguing that the damage to Trade Am's inventory resulted from an excluded "Cause of Loss."  In its ruling on summary judgment, the Court specifically considered, and rejected as insufficient, CIC's alleged evidence of "roof leaks."  The Court stated:

> In its supplemental brief, defendant cites the testimony of Taiwan Murphy that the warehouse had a history of "major leaks" in the roof and that the merchandise was exposed to moisture through a prior sprinkler head incident.  As noted by plaintiff, however, Murphy could not recall whether any prior roof leaks caused any rugs to be damaged.  Furthermore, Murphy's employment with plaintiff ended prior to the loss at issue in this case.  Therefore, the court agrees with plaintiff that

---

[3] There is no dispute that Trade Am's Duluth, Georgia, warehouse is a covered "premises" listed in the Policy.  (Policy, Schedule of Locations, Item 2, listing the Duluth warehouse [D.E. 1-2, p. 22 of 38].)  Nor is there any dispute that Trade Am's merchandise within the warehouse is "Covered Property" under the Policy, as the Policy covers Trade Am's "stock," which is defined to include Trade Am's "merchandise held in storage or for sale."  (Policy, Building and Personal Property Coverage Form §§ A.1.d(3) and G.19, pp. 3, 35 of 35 [D.E. 1-3, 1 of 54, 33 of 54].)

> Murphy's testimony provides little justification for defendant's
> failure to pay or respond to plaintiff's Proof of Loss.

(Order at 30-31 [D.E. 165].)   The Court's summary judgment ruling that CIC
failed to meet its burden to prove any Policy exclusion applies means that no
evidence relating to any Policy exclusion is admissible in connection with Trade
Am's breach of contract claim for property damage coverage.   Consequently, any
alleged evidence concerning "roof leaks" must be excluded from the portion of this
trial addressing Trade Am's breach of contract claim for coverage.[4]

### 4.   Alleged Evidence Of A Downturn In The Market For Trade Am's Rugs Relates Only To CIC's Dismissed Exclusion Defense And Is Irrelevant To The Elements Trade Am Must Establish At Trial.

To establish its *prima facie* claim for business interruption loss, Trade Am
must show that Trade Am suffered a covered loss (which CIC has acknowledged
as discussed above), and that Trade Am has lost "Business Income" sustained
during a necessary "suspension" of its "operations" during the "period of
restoration," caused by the covered loss.   As set forth above, all *causes* of business
interruption loss are covered *unless* CIC can prove a specific exclusion applies.
(Policy, Building and Personal Property Coverage Form § A.5.b.(1), pp. 16-17 of

---

[4]  In addition to certain documentary evidence, proposed CIC witnesses whose
deposition testimony touched on questions of alleged roof leaks include:  Taiwan
Murphy, Rigo Garcia, Francisco Orozco, Phong Le, Michael Lloyd, Joel Steber,
and Linda Hudson.

35 [D.E. 1-3, pp. 14-15 of 54] (emphasis added).)  This Court ruled on summary judgment that CIC lacks sufficient evidence to present to the jury that any such exclusion in the Policy potentially bars coverage.

Nevertheless, CIC has identified evidence to introduce that would be relevant only to support a claim by CIC that Trade Am's business interruption loss was "caused by or result[ed]" from an alleged "loss of market" from Trade Am's customers.  The "loss of market" exclusion in the Policy provides:

### b.  Exclusions

(2)   We will not pay for "loss" caused by or resulting from any of the following:

**(b)   Delay or Loss of Use**

Delay, loss of use or *loss of market*.

(Policy, Building and Personal Property Form § A.3.b.(2)(b), pp. 5-7 of 35 [D.E. 1-3, pp. 3-5 of 54] (third emphasis added).)  The exclusion bars coverage for lost income caused by, among other things, general downturns in the market for the insured's goods or services, as opposed to lost income resulting from a suspension of the insured's operations necessitated by a direct physical loss to the covered property (as in Trade Am's case).  The role of the "loss of market" exclusion is illustrated in Borton & Sons, Inc. v. Travelers Ins. Co., No. 18100-6-III, 2000 Wash. App. LEXIS 93, at *10-11 (Wash. Ct. App. Jan. 25, 2000), in which the

court addressed an *identical* "loss of market" exclusion.  In that case, the insured

sought coverage under an all-risk property policy for economic losses due to the

company's inability to sell 1,089 bins of Fuji apples.  The court explained:

> It is undisputed here that the 1,089 bins of unsold Fuji apples
> were undamaged and marketable in their current condition.
> Borton's inability to sell them was not because of something
> inherent in the apples themselves, but rather (at least in part)
> because *supply exceeded demand in the domestic market. To the*
> *extent Borton alleges its loss was the result of conditions in the*
> *domestic apple market, the loss is excluded by the "loss of*
> *market" exclusion.*

Id. at *6-7 (emphasis added).  *See also* Boyd Motors, Inc. v. Employers Ins. of

Wausau, 880 F.2d 270, 271, 273 (10th Cir. 1989) (Policy exclusion for "loss or

damage caused *directly* or *indirectly* by...loss or damage resulting from delay, *loss*

of market" bars lost income due to "changes in consumer habits" such as "demand

with its intended purchasers."); Duane Reade, Inc. v. St. Paul Fire & Marine Ins.

Co., 279 F. Supp. 2d 235, 240 (S.D.N.Y. 2003) (holding the "loss of market

exclusion relates to losses resulting from economic changes occasioned by, *e.g.*,

competition, shifts in demand, or the like"), aff'd in part and modified in part on

other grounds, 411 F.3d 384 (2d Cir. 2005).

Here, CIC's alleged evidence of a market decline for the purchase of Trade

Am's inventory was before Judge Tidwell on summary judgment, including the

report and testimony of CIC's proposed accounting expert Jon Libbert and CIC's

cross-examination of Trade Am's Chief Financial Officer and Rule 30(b)(6) representative, Nick Howard.  (Order at 15-16 [D.E. 165].)  Having considered the evidence, the Court held that "Section 3(b) of the Policy specifically enumerates the 'exclusions' under the Policy.  As defendant's 30(b)(6) representative admitted at deposition, *none of those specifically enumerated exclusions are applicable to plaintiff's claims*.  Therefore, plaintiff is entitled to summary judgment as to this affirmative defense [that a policy exclusion applies]."  (<u>Id.</u> at 19 (emphasis added).)

CIC cannot circumvent the Court's Order by introducing evidence to suggest that this alleged *excluded* cause of loss -- an alleged economic downturn in the market for Trade Am's rugs -- was the *cause of* Trade Am's lost business income.  If CIC were allowed to argue that an economic downturn caused (directly or indirectly) Trade Am's business income losses the entire structure of Trade Am's "all-risk" insurance policy would be turned on its head and would contradict the unequivocal ruling by this Court on summary judgment that <u>no</u> policy exclusions can bar Trade Am's property damage, business interruption, and extra expense claims.[5]

---

[5] Proposed CIC witnesses whose deposition testimony touched on questions of loss of market due to economic downturn include Jon Libbert, Heidi LaMarca, and

B.  **CIC's Alleged Evidence On Policy Conditions Precedent, Including Trade Am's Alleged Failure To Mitigate And Failure To Cooperate, Is Irrelevant To Trade Am's Breach Of Contract Claim.**

CIC's proposed witness and exhibit lists contain numerous items relating solely to its dismissed defense that Trade Am failed to satisfy conditions precedent to coverage because it did not mitigate its damages or cooperate with CIC's claim investigation.  Following the Court's Order dismissing these affirmative defenses, any alleged evidence pertaining to Trade Am's alleged failure to mitigate or cooperate has no relevance to Trade Am's breach of contract claims.

Such alleged evidence that must be excluded from the trial on Trade Am's breach of contract claim includes, for example, documents and testimony suggesting that Trade Am allegedly:

(i) required Epic Response to suspend its drying operations overnight in the days following August 18, 2010;

(ii) failed timely to respond to the flood over the weekend of August 16-18, 2008;

(iii) obstructed CIC's direct contacts with Trade Am's customers during CIC's claims investigation; and

---

Jeremy Phipps, as well as CIC's cross-examinations of Trade Am witnesses Nick Howard and Stan Johnson.

(iv) failed timely or adequately to produce documents to CIC during its investigation.[6]

On summary judgment, the Court considered, and rejected as insufficient, CIC's evidence on each of these points of cooperation and mitigation. The Court ruled that (1) "defendant fails to point the court to sufficient evidence to create a question of fact as to its affirmative defense of failure to cooperate" (Order at 23 [D.E. 165]). The Court also ruled that CIC "fails to address the issue of how much, if any, of the damage could have been mitigated through the efforts defendant contends should have been taken by plaintiff" and, therefore, "plaintiff's motion for partial summary judgment as to the defense of failure to mitigate loss is GRANTED." (Id. at 24.) Following the Court's Order dismissing CIC's affirmative defenses of failure to cooperate and failure to mitigate, any alleged evidence pertaining to these issues has no relevance whatsoever to Trade Am's breach of contract claims. Allowing CIC to defend against Trade Am's breach of contract claim based on such evidence would improperly negate the Court's Order. Such evidence, accordingly must be excluded.

---

[6] Proposed CIC witnesses whose deposition or other testimony touched on dismissed mitigation or cooperation issues include Austin Larkin, Joe Cunningham, Lee Frady, Jeff Grizzle, Karen Roop, Joel Steber, Jon Libbert, and CIC's cross-examinations of Trade Am witnesses Nick Howard, Pradeep Singh, Lambert Porter, Phong Le, Linda Hudson, Charly Swier, and Chris Williams.

### C.    CIC's Alleged Evidence On The Dismissed Affirmative Defense Of Unclean Hands Is Irrelevant To Trade Am's Breach Of Contract Claim.

CIC's proposed witness and exhibit lists also contain items relating solely to its dismissed defense that Trade Am is barred from recovery under its insurance policy by the doctrine of unclean hands.  As the Court noted in its Order, the doctrine of unclean hands provides a defense against "one who has acted in bad faith, resorted to trickery and deception, or has been guilty of fraud, injustice or unfairness."  (Order at 18 [D.E. 165], quoting In re Kingsley, 518 F.3d 874, 878 (11th Cir. 2008).)  Here, the Court found that "[t]he evidence cited by defendant is insufficient to support a finding that plaintiff engaged in conduct rising to the level of bad faith, trickery, deception, fraud, injustice, or unfairness."  (Id. at 19.)  The Court further found that "[t]here is no evidence that the ruptured coupling was the result of fraud or wrongdoing by plaintiff."  (Id. at 11.)

Such alleged evidence that must be excluded from the trial on Trade Am's breach of contract claim includes, but is not limited to, documents and testimony suggesting that Trade Am allegedly:

> (i) intentionally broke the overhead water pipe by running into it with a forklift; or

(ii) otherwise intentionally caused or contributed to its loss.[7]

Following the Court's Order dismissing CIC's affirmative defense of unclean hands, any alleged evidence pertaining to alleged bad faith, trickery, deception, or fraud has no relevance to Trade Am's breach of contract claims. Allowing CIC to defend against Trade Am's breach of contract claim based on such evidence would improperly negate the Court's Order.

**D.    Bifurcation Is Needed To Preserve The Integrity Of The Trial And Of The Court's Order.**

Bifurcation of trial is a matter within the discretion of the trial court. Blue Water Marine Servs. v. M/Y Natalita III, No. 08-14925, 2009 U.S. App. LEXIS 29119 (11th Cir. Sept. 8, 2009 (affirming trial court's decision to bifurcate trial). Federal Rule of Civil Procedure 42(b) specifically allows for the bifurcation of issues at trial: "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

Here, the trial should be bifurcated such that Trade Am's claim for attorneys' fees (Phase II) is addressed after Trade Am's claim for breach of the

---

[7] Proposed CIC witnesses whose deposition testimony touched on dismissed "unclean hands" issues include Todd Reeves, Michael Lloyd, Taiwan Murphy, and Charly Swier.

insurance policy (Phase I).  Bifurcation is supported here by two key concerns addressed in Rule 42(b) -- to "avoid prejudice" to Trade Am and to significantly "expedite" the trial on Trade Am's breach of contract and damages claims.

First, bifurcation is necessary to preserve the effect of the Court's summary judgment rulings that CIC may not present defenses to coverage that Trade Am failed to cooperate with CIC's investigation, failed to mitigate its damages, failed to satisfy any condition of the policy, or a policy exclusion applies.  In other words, bifurcation will avoid inextricably inter-mingling dismissed affirmative defenses to Trade Am's breach of contract claims with potentially permissible defenses to Trade Am's claim for attorneys' fees, which will confuse the jury and be highly prejudicial to Trade Am.

Second, the proposed bifurcation may preserve judicial resources and the parties' resources because, in the event Trade Am is unsuccessful in its claims for breach of the insurance policy in Phase I, its claim for attorneys' fees need not be tried.

In the absence of bifurcation, it becomes difficult, if not impossible, to ensure that the trial will comport with the Court's Order.  Without bifurcation, the Court would need to issue and enforce a jury instruction requiring the jury to disregard all evidence relating to CIC's dismissed affirmative defenses in its

consideration of Trade Am's breach of contract and damages claims, and instructing the jury to consider such evidence only in consideration of Trade Am's claim for attorneys' fees.  Such an instruction is unlikely to be effective because, if CIC's alleged evidence related to its dismissed affirmative defenses is allowed to be introduced during the trial of Trade Am's breach of contract claim, such evidence will be extremely complicated for the jury to sort and separate in consideration of the breach of contract claim versus the attorneys' fees claim.

Without bifurcation or an effective instruction requiring the jury to sort and separate the types of evidence discussed above in its consideration of Trade Am's claims, the trial will be in violation of the Court's Order.  Moreover, absent bifurcation, it is Trade Am's position that the Court must also provide that limiting instruction at the time when such evidence is introduced, which again will confuse the jury during the proceedings and likely delay the trial.

## IV.    CONCLUSION

For the foregoing reasons, Trade Am respectfully requests that the Court grant its Motion in Limine to Exclude Evidence Relating Only to Defendant's Dismissed Affirmative Defenses, and for Bifurcation of Trial.  Trade Am submits with its Motion a Proposed Order for the Court's consideration.

This 10th day of September, 2010.

s/*Meghan H. Magruder*
Meghan H. Magruder
Georgia Bar No. 372678
Anthony P. Tatum
Georgia Bar No. 306287
Robert D. Stonebraker
Georgia Bar No. 428399
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3521
Phone: (404) 572-4600
Fax: (404) 572-5139
mmagruder@kslaw.com
ttatum@kslaw.com
rstonebraker@kslaw.com

*Attorneys for Plaintiff Trade Am
International Inc.*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this pleading complies with the font requirements of LR 5.1B because the document has been prepared in Times Roman, 14 point.

<u>s/ *Meghan H. Magruder*</u>
Meghan H. Magruder
Georgia Bar No. 372678

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **TRADE AM INTERNATIONAL INC.,** | ) |
| | ) |
| **Plaintiff,** | ) **CIVIL ACTION** |
| | ) **FILE NO:  1:08-cv-03711-ECS** |
| **v.** | ) |
| | ) |
| **THE CINCINNATI INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2010, I electronically filed the foregoing **PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE CERTAIN OF DEFENDANT'S PROPOSED EVIDENCE AND FOR BIFURCATION OF TRIAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Edward H. Lindsey, Jr.            John D. Richardson
Robert A. Luskin                  Mark E. Spear
Kevin A. Spainhour               Richardson, Spear, Spear, Hamby & Owens PC
Goodman McGuffey Lindsey & Jc 169 Dauphin Street, Suite 200
3340 Peachtree Road, N.E.          P.O. Box 1347
2100 Tower Place                  Mobile, Alabama  36633
Atlanta, Georgia  30326-1084       E-mail: jdr@rsspc.com
E-mail: elindsey@gmlj.com          E-mail: mes@rsspc.com
E-mail: rluskin@gmlj.com
E-mail: kspainhour@gmlj.com

                                  *s/ Meghan H. Magruder*
                                  Meghan H. Magruder
                                  Georgia Bar No. 372678